UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jamie Montcalm,

Plaintiffs,

vs.

KidsPeace Corporation,

Defendant.

Civil File No. 07-4182 (RHK/RLE)

**TRIAL BRIEF**

---

## I. INTRODUCTION

On May 24, 2003, Plaintiff was injured in the scope of her employment at Mesabi Academy of KidsPeace ("Mesabi") when two juveniles under Plaintiff's supervision immobilized her and escaped. Plaintiff received temporary total disability benefits and medical expenses from her employer. Except for future medical expenses, Plaintiff then settled her remaining claims under the Minnesota Workers' Compensation Act ("WCA") on a full, final, and complete basis. This action arises on Plaintiff's claim that Defendant, Mesabi's parent company, committed independent acts of negligence that directly caused Plaintiff's harm. Defendant will show that it owed no legal duty to protect Plaintiff from youth in treatment at Mesabi. Defendant will show that it did not breach any duty that may have existed. And Defendant will show that the negligence she attributes to KidsPeace did not cause her injuries.

## II. THE PARTIES

Founded in 1882, KidsPeace is a private charity dedicated to serving the behavioral and mental health needs of children, preadolescents, and teens at clinical, therapeutic, and educational facilities throughout the country. Mesabi, a subsidiary of KidsPeace, is a juvenile correctional facility licensed by the Minnesota Department of Corrections ("DOC"). Plaintiff

worked as a youth care worker ("YCW") at Mesabi for nearly two years before the incident giving rise to this claim.

## III. FACTS

The mission of KidsPeace is to give hope, help, and healing to children facing crisis. In 1996, studies showed that traditional juvenile correctional facilities—many of them run like boot camps—resulted in recidivism rates ranging from 80-90 percent. In response, KidsPeace worked to create a juvenile correctional program incorporating better treatment and mental health components. To that end, KidsPeace collaborated with the DOC to design Mesabi. In late 1998, the DOC concluded that Mesabi complied with the rules governing juvenile residential facilities and offered unique opportunities for programming. With DOC guidance and licensure, Mesabi later increased its treatment capacity, built a Secure Unit, and added a sex offender treatment program. Mesabi's facilities and programming have been licensed by the DOC since inception.

The mission of Mesabi is to "help youth transform cycles of failure into confidence for life." Mesabi provides diagnostic, residential, sex offender, and secure treatment for male youth ages 10-18 with a minimum IQ of 60. Mesabi is not cut from the boot camp mold and does not treat youth like inmates. Mesabi believes that every youth is unique, that safety is a primary need and fundamental right of every youth, and that Americans share a responsibility to positively nurture, respect, and safeguard youth. Mesabi's policies, procedures, and programming stem from these principles, and youth treated at Mesabi reoffend at a remarkably lower rate than youth held in boot camp settings.

The relationship between KidsPeace and Mesabi is the focal point of this case. KidsPeace designed Mesabi's facilities and initial programming in collaboration with the DOC. KidsPeace markets Mesabi's treatment program to probation officers, judges, and social service agencies.

KidsPeace operates a central contact number and referral service for Mesabi. Pursuant to a Management Agreement (the "Agreement"), KidsPeace proposes budgets, manages payroll, files taxes, conducts limited personnel training, and contracts to provide for equipment acquisition and maintenance. KidsPeace does not provide security services under the Agreement.

Mesabi is highly autonomous in all other respects. Mesabi owns its facilities, and its Board of Directors exercises control over the operational, professional, and ethical affairs of Mesabi "at all times." Mesabi retains the right to "change, repeal or alter policies adopted by [KidsPeace] in connection with the provision of support services." Mesabi has complete control over admissions. Mesabi also identifies and purchases necessary safety and security equipment. In sum, Mesabi makes all decisions related to the day-to-day operation of the Academy.

Plaintiff received a law enforcement degree from Hibbing Community College in 2001. After passing the Police Officer Standards and Training ("POST") exam, Plaintiff applied unsuccessfully to three police departments before accepting a position as a nightshift YCW at Mesabi. Plaintiff worked at Mesabi for nearly two years before this incident. Plaintiff stated that her job was to "oversee the safety and security of the youth during the night." Plaintiff received two weeks of orientation training and ongoing safety and security training. Mesabi drilled the necessity of alertness and constant observation. Plaintiff was taught principles of "scanning and tracking." This entailed periodic scanning of her surroundings and the entire youth group in her care, along with monitoring and tracking of specific individuals. Plaintiff learned Professional Crisis Management ("PCM"), the method approved by KidsPeace for preventing and managing crisis situations in a safe manner for youth and staff at the facility.

Turning to the events giving rise to this claim, Ricardo Thomas (age 17 at the time of his escape) and Nicholas Lightfoot (age 18 at the time of escape) were admitted to Mesabi in

October and November 2002, respectively. Both youth hailed from Washington, D.C. Thomas stood 5' 9 ¼" inches tall and weighed 148 pounds. Lightfoot stood 5' 10 ½" and weighed 140. Thomas had previously been charged with armed robbery, destruction of property, theft, and imminent danger of sibling abuse. Lightfoot previously pled guilty to assault with attempt to kill for shooting at the driver of a car. Lightfoot had also been charged with burglary, assault, theft, and failure to pay subway fare.

Thomas and Lightfoot were recognized run risks. Both were in the Secure Unit shortly before their escape because Mesabi staff knew they hoped to get away. Plaintiff was privy to this knowledge. In fact, Plaintiff made the following log entry on May 8, 2003:

> Both Ricardo Thomas and Nick Lightfoot were awake early this morning. Ricardo was sitting in his window and complied when staff asked him to get down. Ricardo then sat in his chair at his doorway. Nick asked to step out and use the bathroom. When Nick asked to step out of the bathroom and back into his room, there was definite eye contact with Ricardo. As soon as Nick stepped into his room, Ricardo asked to use the bathroom. Both youth used the same stall. Both youth are on run risk—watch them carefully!

The return of Thomas and Lightfoot to the residential Enterprise Unit was the result of a decision reached by Mesabi clinical staff. On the night of May 23 and early morning of May 24, 2003, both youth were awake and asking Plaintiff for permission to take bathroom breaks. Shortly before 1 a.m., Thomas began telling Plaintiff that he was having sexual fantasies about her. Plaintiff did not report this unusual behavior to Mesabi employees hired to float throughout the facility or to central command. Instead, Plaintiff went to the door of Thomas's room, told him to speak to a counselor about his fantasies, and told Thomas to go to bed. Plaintiff then returned to the staff desk and turned her back on Thomas to make log entries. Thomas approached her from behind and placed her in a chokehold. Plaintiff grabbed her radio long enough to issue sounds of

distress. She then found herself on the floor. Plaintiff looked over and saw Thomas trying to kick out a window. Plaintiff went toward him. Plaintiff heard someone yell, "Get her, get her," and Plaintiff was knocked down a second time. Mesabi staff quickly responded to the sounds of radio distress. Thomas and Lightfoot jumped out the broken window before they arrived.

## IV. ISSUES

The issues in this common law negligence claim are simply stated: Did KidsPeace owe Plaintiff a legal duty; did KidsPeace breach that duty; did that breach directly harm Plaintiff; and is Plaintiff entitled to damages in excess of one million dollars as a result of psychological injuries inhibiting her from working as a police officer?

## IV. ANTICIPATED EVIDENCE

1. **Negligence.** Plaintiff claims that KidsPeace negligently provided services to Mesabi, which directly led to her injuries. KidsPeace intends to show that it did not owe Plaintiff a legal duty to protect her from youth at the facility. KidsPeace *will* show that it did not breach any such duty. In any event, the alleged negligence attributed to KidsPeace did not serve as a direct cause of Plaintiff's harm.

2. **Duty & Breach.** "The basic elements of a negligence claim are: (1) existence of a duty of care; (2) breach of that duty; (3) proximate causation; and (4) injury." *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). The existence of a legal duty is a question of law. *Id.* Mesabi was Plaintiff's direct employer and responsible for the day-to-day operation of the facility, including personnel training, scheduling, staffing, and security. Plaintiff's only basis for claiming that KidsPeace owed her a legal duty rests on the management agreement between Mesabi and KidsPeace. As set forth in Restatement (Second) of Torts, § 324A:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary

> for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

As a matter of law, KidsPeace owed no legal duty (under the Management Agreement or otherwise) to protect Plaintiff from the youth she was charged with monitoring and keeping safe. Mesabi may have owed such a duty, but Plaintiff is barred from suing Mesabi under the exclusive remedy provision of the WCA. Mesabi, not KidsPeace, was responsible for providing a safe environment for both staff and youth at its facility. Even if a legal duty is found to exist, however, KidsPeace committed no breach. As set forth below, KidsPeace exercised reasonable care in rendering all services provided to Mesabi:

KidsPeace used reasonable care in designing Mesabi's facilities and initial programming. KidsPeace did not design Mesabi in a vacuum. KidsPeace collaborated with the DOC to ensure compliance with state rules and regulations. Mesabi has been licensed by the DOC since its inception. Plaintiff will decry the fact that youth were not locked in their rooms; Plaintiff will claim that one woman should not have been scheduled to work the Enterprise Unit alone at night. But the Enterprise Unit met DOC requirements, and KidsPeace was not responsible for staffing and scheduling at the facility (which also, incidentally, met DOC requirements).

KidsPeace used reasonable care in providing marketing and referral services to Mesabi. Plaintiff will claim that Mesabi was not the right place for violent, hard-bitten youth such as Thomas and Lightfoot. KidsPeace disagrees, but the point is irrelevant. Mesabi, not KidsPeace, controlled admissions at the facility and decided which youth would be admitted. Plaintiff may

claim that the youth population at Mesabi was too dangerous because KidsPeace referred out-of-state youth to the facility. But Mesabi's DOC license to treat at-risk youth did not discriminate based on state of origin. In any event, Mesabi, not KidsPeace, controlled admissions.

KidsPeace used reasonable care in providing budget and financial services to Mesabi. Plaintiff may claim that KidsPeace occupies a position of financial authority which inhibits operational decisions at Mesabi when times get tough. No evidence supports such a claim.

Under the Management Agreement, KidsPeace states that it will contract for the provision of equipment and maintenance at Mesabi. Plaintiff may claim that alarms could have been installed to alert staff when youth were leaving their rooms. Plaintiff may also claim that units should be constantly monitored by cameras, and staff radios should be equipped with "man down" buttons. Depositions taken in this case reveal that Mesabi, not KidsPeace, identifies and purchases safety and security equipment for the facility. KidsPeace proposes budgets and signs off on purchases, but Mesabi makes the call. KidsPeace does not block or control Mesabi's authority to purchase necessary equipment. Moreover, the equipment available on the night of Plaintiff's assault—such as her radio—met DOC standards and functioned properly.

KidsPeace used reasonable care in mandating the use of PCM at Mesabi. Plaintiff will claim that PCM does not adequately protect staff during crisis situations. Defendant's answer is three-fold. First, Mesabi's policies and procedures are licensed by the DOC, and PCM is a safe and effective technique for working with youth. Second, Mesabi, not KidsPeace, provides the bulk of safety and security training to its employees, and any training conducted by KidsPeace is done with reasonable care. Third, Plaintiff could have prevented the assault by following her training, staying alert, and calling for assistance when Thomas started to behave in an unusual way. Plaintiff learned defensive tactics as part of her prior law enforcement training, and Plaintiff

had a right to defend herself in any manner available when she was attacked. But once she allowed Thomas to catch her off guard, Plaintiff's options were limited. More aggressive procedures for restraining and subduing youth at Mesabi would not have prevented the harm Plaintiff suffered.

In sum, KidsPeace exercised reasonable care in providing all services to Mesabi. Plaintiff will be unable to show any existence or breach of a legal duty, and KidsPeace will move for a directed verdict at its earliest opportunity.

**A. <u>Causation</u>.**

Minnesota applies the substantial factor test for causation: the negligent act is a direct or proximate cause of harm if the act was a substantial factor in the harm's occurrence. *See* Restatement (Second) of Torts § 431 (1965).

Plaintiff's harm bears no relation to the negligence she attributes to KidsPeace. The reprehensible acts of Thomas and Lightfoot were substantial factors in Plaintiff's harm, along with Plaintiff's failure to remain alert. Staffing levels may have been a substantial factor, but Mesabi, not KidsPeace, controls staffing decisions at Mesabi. Mesabi sets staff levels on individual units and the availability of floaters throughout the facility.

By contrast, the design of the facility was not a direct cause of Plaintiff's harm. The design of the facility was created in collaboration with the DOC to treat high-risk youth, not lock them away in a cell.

The marketing and referral services provided by KidsPeace were not a substantial factor in Plaintiff's attack. Mesabi, not KidsPeace, decided to admit Thomas and Lightfoot, and the DOC licensed Mesabi to work with high-risk youth.

The use of PCM at Mesabi was not a substantial factor in Plaintiff's attack. Plaintiff was trained to scan, track, and call for back-up at the first sign of trouble. Harsher methods for subduing youth would not have helped Plaintiff once she allowed Thomas to catch her off guard.

Similarly, Mesabi provided rigorous safety, security, and PCM training to its employees. Plaintiff's injuries were not caused by lack of training, whether that training was conducted by KidsPeace or Mesabi. Plaintiff's harm resulted from a failure to observe her training.

Mesabi's safety and security equipment did not cause Plaintiff's harm. The equipment functioned properly on the night of the incident—including Plaintiff's radio.

Last, the financial services provided by KidsPeace to Mesabi were not a substantial factor in Plaintiff's harm. Mesabi was never denied authority to purchase necessary safety, security, and operational equipment, and the equipment available at the facility met DOC requirements.

**B. Damages.**

Plaintiff claims that she will never be able to work as a law enforcement officer due to her psychological injuries. Comparing the lifetime salary of a police officer to her current salary as a mechanic, Plaintiff seeks over $1,000,000 for loss of future income.

Plaintiff's claims for loss of future income are too speculative, remote, and conjectural to allow recovery. *See Pietrzak v. Eggen*, 295 N.W.2d 504, 507 (Minn. 1980). Plaintiff must prove future loss of income to a reasonable certainty, showing that such damage is more likely to occur than not. *Id.* But Plaintiff never embarked on the career she claims to have now lost. Plaintiff applied to three police departments without success before joining Mesabi. Plaintiff did not seek employment with, for example, the State Patrol, the Border Patrol, the DNR, or the Department of Corrections. Instead, Plaintiff worked at Mesabi for two years without submitting additional applications. Plaintiff asks this court to suspend incredulity by claiming entitlement to over one

million dollars for income Plaintiff would have earned *to a reasonable certainty* in the field of law enforcement.

As a final note, KidsPeace has not attempted to claim status as Plaintiff's employer in this litigation, even though KidsPeace provided Mesabi's workers' compensation insurance, and Plaintiff settled her workers' compensation claims directly with KidsPeace in September 2004. But if Plaintiff recovers against KidsPeace as a negligent "third party," Mesabi will be entitled to exercise its right of subrogation, which will reduce Plaintiff's recovery by the amount set forth in Minn. Stat. § 176.061, subd. 6.

### C. **Additional Defenses.**

KidsPeace asserts that the comparative fault of Plaintiff, along with Mesabi, is greater than that of KidsPeace. KidsPeace intends to ask the jury to apportion the relative fault of all three parties. Contributory negligence does not bar recovery in Minnesota. *See* Minn. Stat. § 604.01, subd. 1 (2006). But if Plaintiff's comparative fault is greater than that of KidsPeace, plaintiff will be barred from recovering damages. *Id.* Plaintiff's recovery will also be reduced in proportion to her own negligence. *See id.*

Last, KidsPeace will note that Plaintiff had knowledge of the risks associated with working at Mesabi, direct knowledge and appreciation of the risks associated with Thomas and Lightfoot, and Plaintiff voluntarily chose to perform her duties as a youth care worker.

## V. CONCLUSION

KidsPeace did not owe a legal duty to Plaintiff, breach a duty to Plaintiff, or commit an act directly resulting in Plaintiff's harm. Accordingly, Defendant intends to move for a directed verdict at its earliest opportunity.

Dated this _____ day of November, 2008.

HANFT FRIDE,
A Professional Association

By s/John D. Kelly
John D. Kelly
Attorney Registration No. 1009370
Nathan N. LaCoursiere
Attorney Registration No. 0388349
Attorneys for Defendant
1000 U.S. Bank Place
130 West Superior Street
Duluth, Minnesota 55802-2094
(218) 722-4766